### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAYTON NOAL<br>P.O. Box 191<br>Duncansville, PA 16635<br><br>           Plaintiff,<br>v.<br><br>LEIGHTON SECURITY SERVICES, INC.<br>403 Elm Street<br>Honey Grove, TX 75446<br><br>           Defendant. | : : : : : : : : : : : : : : | **CIVIL ACTION**<br><br><br><br>**No.:** 3:21-cv-23<br><br><br><br>**JURY TRIAL DEMANDED** |

### CIVIL ACTION COMPLAINT

Plaintiff, Clayton Noal (*hereinafter* referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.     Plaintiff has initiated this action to redress violations by Leighton Security Services, Inc. (*hereinafter* "Defendant") of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. § 201 *et. seq.*) and other applicable stated and common law claim(s).  Plaintiff was not properly paid overtime wages mandated by state and federal law(s).  As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

3.     This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in

order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendant resides in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Venue is further appropriate in this District as follows:

   a. Plaintiff was hired from his home in Duncansville, Pennsylvania;

   b. Plaintiff was considered based in Pennsylvania;

   c. During his employment with Defendant, Plaintiff spent a substantial period of time working in Pennsylvania (primarily Blair County, Pennsylvania);

   d. Plaintiff was required to undergo a Pennsylvania Criminal Background check in order to perform his duties for Defendant; and

   e. In order to perform the work that Plaintiff was required to do for Defendant in Pennsylvania, at all times relevant herein, Defendant contracted with Pennsylvania security companies with Private Investigator licenses in order to be compliant with Pennsylvania state law.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant Leighton Security Services, Inc. is a private security company, providing services to customers in several states within the United States (including Pennsylvania), with headquarters at the address set forth in the caption.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein as if set forth in full.

11. Plaintiff worked for Defendant for approximately 2 years.

12. Plaintiff was hired by Defendant in or about November of 2017, as a security guard.

13. As a security guard for Defendant, Plaintiff's responsibilities included providing security for customer work sites located primarily in Pennsylvania (but also in West Virginia).

14. During his employment with Defendant, Plaintiff was supervised by Operations Commander, Gary Washburn (*hereinafter* "Washburn").

### -Misclassification as "Independent Contractor"-

15. At the outset of Plaintiff's employment with Defendant, he was informed that he was an independent contractor with an hourly rate of $30.00 per hour.

16. At all relevant times during Plaintiff's employment with Defendant, however, Plaintiff was misclassified as an independent contractor, when in fact he was a non-exempt employee, as evidenced by the following:

   a. Defendant solely acquired the customers that Plaintiff worked for and the projects that he completed;

    b. Defendant dictated Plaintiff's working hours and schedule for each customer and project, and, in fact, Defendant required that Plaintiff check in hourly on the WhatsApp for status reports;

    c. Defendant dictated what projects Plaintiff would work on and where he would work each day and required that Plaintiff complete a daily log for each shift, which was delivered to Pike daily;

    d. Defendant required that Plaintiff wear a specific "uniform" of black polo shirt, tan or khaki pants, and black or coyote boots;

    e. Defendant dictated the type/brand/color of safety vests, flashlights, glasses, and gloves Plaintiff required to perform his job duties;

    f. Plaintiff was consistently supervised by Defendant's management; and

    g. While Plaintiff worked over 40 hours during the week and was not paid overtime, Defendant did consider some holiday work to be overtime work and compensated Plaintiff time and one half the hourly rate of $30.00 (i.e., $45.00) per hour for some of the holidays he worked for Defendant.

17. Plaintiff was improperly treated by Defendant as an independent contractor being paid a straight hourly rate of $30.00, despite how many hours he actually worked. Plaintiff, however, was an employee who did not qualify for any exemption from overtime and should have been paid overtime compensation for all hours that he worked over 40 hours in one week.

### - **Overtime Violations**-

18. While employed with Defendant, Plaintiff was at all times relevant herein unequivocally a non-exempt employee who should have been paid overtime compensation for all hours worked over 40 hours per week at a rate of time and one half.

19. Beginning in or about August of 2018 and throughout the remainder of his tenure with Defendant, Plaintiff consistently worked 84 hours per week (Monday through Sunday); however, Plaintiff was only ever paid a straight hourly rate of $30.00 for all hours he worked, regardless of how many hours he worked each week.

20. Therefore, Plaintiff was <u>never</u> paid at a rate of time and one half for all hours that he worked over 40 in one week.

21. At all times relevant herein, Defendant knew that Plaintiff was a non-exempt employee who should have been paid a rate of time and one half for all hours that he worked over 40 each week.

22. All of Defendant's actions as aforesaid are without question willful, intentional and in blatant disregard for state and federal laws, as evidenced by:

   a. Defendant failing to pay Plaintiff overtime compensation at the rate of time and one half for <u>all hours</u> that he worked in excess of 40 hours per week; and

   b. Defendant failing to adequately review Plaintiff's job description and classify him accordingly.

23. Throughout his tenure with Defendant, in addition to not being paid time and one half his hourly wage for all hours worked over 40 each week, Plaintiff often had to wait several months to be paid <u>any wages</u> for hours he had worked. For example, toward the end of his employment with Defendant, Defendant had not paid several of its employees for an approximate 14-week period. Because of these payroll inconsistencies and Defendant's aforesaid illegal overtime practices, Plaintiff voluntarily separated from his employment with Defendant in December of 2019.

24. Defendant has and continues to implement a system that results in non-payment of overtime compensation to other similarly situated employees.

25. In addition to being owed almost 1.5 years of unpaid overtime, Plaintiff is also owed liquidated (double) damages for each and every penny of overtime he was not properly paid as mandated by applicable law.[1]

26. As the aforementioned evidence clearly demonstrates that these violations were willful, Plaintiff seeks all wages he was owed going back three (3) years from the date of this complaint.

## COUNT I
## Violations of the Fair Labor Standards Act ("FLSA")
### (Failure to Pay Overtime Wages)

27. The foregoing paragraphs are incorporated herein as if set forth in full.

28. At all times relevant herein, Defendant, has and continues to be, an "employer" within the meaning of the FLSA.

29. The FLSA requires covered employers, such as Defendant, to minimally compensate their "non-exempt" employees, such as Plaintiff, at a rate of 1.5 times the employee's regular rate of pay for each overtime hour that the employee works in excess of 40 hours in a workweek.

---

[1] *See e.g. Solis v. Min Fang Yang*, 345 Fed. Appx. 35 (6th Cir. 2009) (Affirming award of liquidated damages explaining "under the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages. Rather, they are considered the norm and have even been referred to by this court as mandatory."); *Gayle v. Harry's Nurses Registry, Inc*., 594 Fed. Appx. 714, 718 (2d Cir. 2014)(Affirming award of liquidated damages explaining there is an automatic "presumption" of liquidated damages and "double damages are the **norm,** single damages the exception," as the burden to avoid liquidated damages is a "difficult burden."); *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014)(Affirming award of liquidated damages explaining they are the "norm" and "mandatory" unless the employer can establish the very "difficult burden" of subjective and objective attempts at FLSA compliance); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008)(Affirming award of liquidated damages explaining that the employer mistakenly argues its non-compliance was not willful, misunderstanding the high burden to show affirmative steps of attempted compliance and research of the FLSA and separately that its diligence and belief in non-payment of overtime was also objectively reasonable.); *Chao v. Hotel Oasis, Inc., 493 F.3d 26 (1st Cir. 2007)(Affirming award of liquidated damages explaining that they will always be considered the "norm" in FLSA cases); *Lockwood v. Prince George's County,* 2000 U.S. App. LEXIS 15302 (4th Cir. 2000)(Affirming award of liquidated damages explaining they are the "norm" and that an employer may not take an ostrich-like approach and refuse to research its obligations under the FLSA and to objectively explain why it failed to comply with the FLSA); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999) (Reversing the district court for not awarding liquidated damages, as doubling unpaid overtime is the rule, not an exception); *Nero v. Industrial Molding Corp*., 167 F.3d 921 (5th Cir. 1999) (Affirming award of liquidated damages, as there is a presumption of entitlement to liquidated damages which are the norm).

30. At all times relevant herein, Plaintiff was a non-exempt "employee" within the meaning of the FLSA.

31. Defendant knew that Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

32. Defendant failed to pay Plaintiff proper overtime compensation for all hours that he worked over 40 hours in one week.

33. As a result of Defendant's failure to pay Plaintiff the overtime compensation due him, Defendant violated the FLSA and caused Plaintiff to suffer damages in the form of unpaid overtime compensation.

### COUNT II
### Violations of the Pennsylvania Minimum Wage Act ("PMWA")
(Failure to Pay Overtime Wages)

34. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

35. Plaintiff was not properly paid for all owed overtime as explained s*upra*. And such actions constitute indefensible violations of the Pennsylvania Minimum Wage Act ("PMWA").

### COUNT III
### Fraud
(State Law/Common Law)

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. Defendant willfully and fraudulently misclassified and represented to Plaintiff that he was independent contractor who was not entitled to non-exempt wages under the PMWA, when in fact Plaintiff was a non-exempt employee entitled to such wages under the PMWA.

38. Defendant willfully and fraudulently misclassified Plaintiff's earnings as non-employee income for the purpose of avoiding taxes.

39. Plaintiff relied to his detriment on Defendant's representation that Plaintiff was an independent contractor who was not entitled to wages under the PMWA.

40. As a result of his reliance on Defendant's fraudulent representation that Plaintiff was an independent contractor who was not entitled to wages under the PMWA, Plaintiff suffered harm in the form of the following damages:

   a. Defendant did not withhold any taxes on Plaintiff's behalf;

   b. Because Defendant incorrectly classified Plaintiff as an independent contractor, Plaintiff was subjected to greater tax liability, paying both his and Defendant's share of FICA, FUTA, and other taxes; and

   c. As a direct result of Defendant's having misclassified Plaintiff as a 1099 independent contractor, Defendant made no social security contributions on Plaintiff's behalf.  Consequently, Plaintiff's retirement eligibility is less than it would be had Defendant not fraudulently misclassified him as a 1099 independent contractor instead of a non-exempt employee.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings and any other owed compensation. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered legal violations at the hands of Defendant until the date of verdict;

B. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or

other employers from engaging in such misconduct in the future (and to compensate Plaintiff for lost use of income);

  C. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate;

  D. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

  E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

  F. Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

          Respectfully submitted,

          **KARPF, KARPF & CERUTTI, P.C.**

    By: _____
          Ari R. Karpf, Esq.
          3331 Street Road
          Two Greenwood Square
          Suite 128
          Bensalem, PA 19020
          (215) 639-0801

Dated: February 16, 2021