# Exhibit A

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (the "Agreement") is entered into by and between Clayton Noal ("Noal") and Leighton Security Services, Inc. ("Leighton") (each a "Party" and, collectively, the "Parties").

## Recitals

WHEREAS, Leighton provides security services on pipeline construction projects;

WHEREAS, in 2013, the Wage and Hour Division, United States Department of Labor found that Leighton's classification of its security guards under the Fair Labor Standards Act ("FLSA") as independent contractors, rather than as employees, was correct ("2013 Audit"):

WHEREAS, in 2018, the Pennsylvania Department of Labor and Industry found that security guards working on Leighton's jobs in Pennsylvania "met the a/b test and are exempt for PA UC" ("PA Audit");

WHEREAS, Noal provided security guard services beginning in 2017 through 2019 on Leighton projects in Pennsylvania;

WHEREAS, Noal scheduled security jobs through and reported to Benson Investigations;

WHEREAS, in late 2019, Noal made a claim with the Wage and Hour Division, United States Department of Labor seeking overtime and minimum wages under the FLSA ("DOL Audit");

WHEREAS, Leighton disagreed with the DOL Audit;

WHEREAS, on February 17, 2021, Noal filed a lawsuit against Leighton to recover alleged overtime under the Pennsylvania Minimum Wage Act and under the FLSA, for fraud under state law and common law, for liquidated damages, for exemplary damages and attorney fees, pending before United States District Judge Stephanie L. Haines, in Civil Action No. 3:21-cv-00023-SLH, styled *Clayton Noal v. Leighton Security Services, Inc.*, in the United States District Court for the Western District of Pennsylvania (the "Lawsuit");

WHEREAS, Leighton answered the Lawsuit, denying all liability, and asserting affirmative defenses to Noal's claims and causes of action;

WHEREAS, the Parties have significant factual and legal disputes about whether Noal was properly classified as an independent contractor, or should have been classified as an employee of Benson or an employee of Leighton, for purposes of Sections 206 and 207 of the FLSA;

WHEREAS, Leighton firmly believes that the 2013 Audit and the PA Audit were correct in finding that security guards working on Leighton projects were independent contractors;

WHEREAS, after conducting initial discovery in this Lawsuit and engaging in court-ordered mediation, the Parties determined that it may be best, in this case, to avoid the time, expense and uncertainty and without admitting any liability, the Parties agreed to settle on the terms set forth herein;

NOW, THEREFORE, in consideration of the foregoing recitals, incorporated herein by this reference, and the mutual covenants, terms and provisions set forth herein, the Parties agree as follows:

## Agreements

1.      **Settlement Payments.**     Without admitting any liability whatsoever, or acknowledging or agreeing that Noal was an employee of Leighton while providing security guard services on Leighton's projects in the period 2017 through 2020, Leighton and Noal agree that Leighton shall pay Twenty One Thousand Dollars ($21,000) to Noal and the Attorneys, in the amounts and on or before the dates set forth in Exhibit "A", attached hereto and incorporated herein by this reference ("Settlement Payments"), plus pay Noal's mediation fee of $2,450 (which has been paid directly to the mediator by Leighton).

2.      **Tax Treatment.** Settlement Payments by Leighton to Noal will be made without deductions or withholding of any kind, including, for example, for payroll taxes, Medicare, FICA, or state, local or federal income taxes. Leighton will report the Settlement Payment on a Form 1099 for the year in which such amounts are paid. Noal is responsible for all taxes associated with, or arising from, the Settlement Payments, and indemnifies and holds Leighton harmless from any and all liability, interest, penalty or other amount relating thereto. In addition, the Attorneys have provided a Form W-9 to Leighton, and Noal and the Attorneys have agreed that certain amounts will be paid directly to Attorneys. Noal agrees to indemnify and hold Leighton harmless from any and all taxes, penalties, interest or other amounts for paying and reporting the Settlement Amount as agreed by Noal and Attorneys pursuant to Exhibit "A".

3.      **Default.** If Leighton fails to timely make any of the Settlement Payments when due under this Agreement, such failure will constitute an event of default only if full payment of the subject payment is not made within five business days of written notice from Noal or Attorney to Leighton and Leighton's counsel by email to the following addresses: (i) kevin@leighton-services.com; and (ii) scotta@andersongrossman.com. In the event of default and failure to cure within five business days of such written notice, Noal may, at his sole option and discretion, upon written notice to Leighton, make the remaining balance of the Settlement Payments immediately due and payable.

4.      **Prepayment.** Leighton may prepay the Settlement Payments, in whole or in part, without penalty. Prepayments shall be applied, in whole or in part, to the next payment due, then to the next payment due and so forth, depending on the amount of the prepayment.

5.      **Abatement of the Lawsuit.**  From the Court's approval of this settlement until the Settlement Payments are made by Leighton, the Court shall retain jurisdiction of the Parties to enforce the payment terms of this Agreement.

6.      **Release by Noal.**  Upon the Effective Date, Noal releases, remises, acquits, and forever discharges Leighton and Benson Investigations, as well as their past or present shareholders, directors, principals, officers, managers, employees, agents, third-party agents, attorneys, representatives, predecessors, successors, assigns, and affiliated or associated entities or individuals of whatever kind, of and from any and all past and present claims, demands, obligations, actions, causes of action, rights, damages, expenses, and requests, whether known or unknown, arising from or relating to: (a) the determination, findings, or amounts allegedly owed by Leighton pursuant to the DOL Audit, (b) that were, or could have been, asserted in the Lawsuit or (c) that in any way relate to the facts set forth in the Lawsuit. This release expressly excludes any and all claims arising from an event of default or any other breach of this Agreement.

7.      **Confidentiality.**  The terms of this Agreement shall remain confidential by each Party and their principals, past or present officers, managers, directors, shareholders, employees, agents, third-party agents, attorneys, representatives, predecessors, successors, assigns, and affiliated or associated entities or individuals, except that either Party may disclose information: (a) when mandated by state or federal law; (b) as necessary by any Party to their respective attorneys, accountants, and auditors; (c) for purposes of disclosure on tax documents; or (d) as necessary by either Party for the enforcement of this Agreement.  If asked about the resolution of this dispute, the Parties may respond that the Parties were able to resolve disputed issues to their mutual satisfaction.

8.      **No Liability.**  The Parties acknowledge that this Agreement is not to be construed in any way as an admission of liability by Leighton.

9.      **Satisfaction of DOL Audit**.  The Parties expressly intend and agree that the payment of the Settlement Payments will be construed to satisfy, in full, any and all amounts owed, or claimed to be owed, to or for the benefit of Noal, under or pursuant to the DOL Audit.

10.     **Informed Consent.**  By entering into this Agreement, each Party represents that: (a) it has relied upon the advice of its attorneys, each of whom is the attorney of its own choice, concerning the consequences of this Agreement; (b) the terms of this Agreement are fully understood and voluntarily accepted by each Party; (c) it is relying on its own judgment in entering into this Agreement; and (d) it is not relying on any statement or representation by any other Party, other than those expressly set forth in the Agreement.

11.     **Ownership of Claims.**  Noal and Attorneys each represent and warrant to Leighton that it is the sole owner of the claims or causes of action released in this Agreement and it has not previously assigned or transferred any interest in such claims or causes of action to any other person or entity.

12.     **Duly Empowered.**  Each Party represents and warrants to the other Party that it is: (a) fully authorized to enter into this Agreement; and (b) competent to do so.

13.    **Successors in Interest**.  This Agreement is binding upon and will inure to the benefit of each Party's administrators, representatives, successors, and assigns.

14.    **Modification.**    The provisions of this Agreement may be changed, waived, modified, or varied only by written agreement of the Parties.

15.    **Entire Agreement.**  This Agreement contains the entire agreement between the Parties with regard to the matters set forth herein.  This Agreement and the documents referred to herein shall supersede any prior written or oral agreements between the Parties concerning the subject matter herein.

16.    **Multiple Counterparts.**    This Agreement may be executed in multiple counterparts and with detachable signature pages each of which will be deemed an original and all of which taken together will constitute one and the same agreement.  All signatures may be by facsimile or e-mail and need not be on the same counterpart.  A copy of the Agreement and of the signatures is effective as an original.

17.    **Enforcement of this Agreement.**  If any of the Parties hereto takes action to enforce this Agreement, all attorneys' fees and costs of the prevailing party shall be paid by the non-prevailing party. By signing the Agreement, the Parties hereby agree that any disputes regarding the Agreement, its enforcement, or its terms will, if necessary, be resolved by the Court in the Lawsuit.

18.    **Interpretation.**  The Parties agree that they have reviewed this Agreement and that each fully understands and voluntarily accepts all the provisions contained in it. The Parties further agree that this Agreement is the product of good-faith, arms-length negotiations between the Parties, and that any rule of construction whereby ambiguities are to be resolved against the drafting party, shall not apply in the interpretation of this Agreement.

19.    **Effective Date**.  The "Effective Date" is the date on which the Court approves this Agreement.

20.    **Headings.**  The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation.

IN WITNESS WHEREOF, the Parties have executed and delivered this Agreement as of the date of the last signature below:

**CLAYTON NOAL**

**LEIGHTON SECURITY SERVICES, INC.**

By: _____

Printed Name: _____

Title: _____

Dated: _____

KARPF, KARPF & CERUTTI, P.C.

By: _____
      Jeremy M. Cerutti,
      Attorney for Plaintiff

**ATTORNEYS (AS TO FORM ONLY):**

ANDERSON GROSSMAN, PLLC

By: _____
      R. Scott Anderson
      Attorney for Defendant

MEYER, UNKOVIC & SCOTT LLP

By: _____
      Brittany M. Bloam
      Attorney for Defendant

## <u>ACKNOWLEDGMENT</u>

**STATE OF TEXAS**                                    §
                                                      §
**COUNTY OF _____**                          §

 **BEFORE ME,** the undersigned authority, on this day personally appeared James Kevin

Mayberry, known to me to be the person whose name is subscribed above, and affirmed that he is

an authorized agent of Leighton Security Services, Inc., that he executed the above and foregoing

Agreement as the act and deed of said company, for the purposes and consideration therein

expressed and with full authority to so act.

 Subscribed and acknowledged to before me on the _____ day of _____, 2021.


_____
Notary Public for the State of Texas

## ACKNOWLEDGMENT

STATE OF _Pennsylvania_                  §
                                         §
COUNTY OF _Blair_                        §

**BEFORE ME,** the undersigned authority, on this day personally appeared Clayton Noal, known to me to be the person whose name is subscribed above, that he executed the above and foregoing Agreement as the act and deed of himself, for the purposes and consideration therein expressed and with full authority.

Subscribed and acknowledged to before me on the _9_ day of _September,_ 2021.

_____
Notary Public for the State of _____PA_____

> Commonwealth of Pennsylvania - Notary Seal
> Susan E. Rickabaugh, Notary Public
> Blair County
> My commission expires April 20, 2022
> Commission number 1137566

Member, Pennsylvania Association of Notaries

**EXHIBIT "A"**

**Settlement Payments**

| Date Due | Total Payment | To Attorneys | To Noal |
|---|---|---|---|
| Effective Date | $8,000.00 | $3,176.28 | $4,823.72 |
| One month after Effective Date | $4,333.34 | $1,516.67 | $2,816.67 |
| Two months after Effective Date | $4,333.33 | $1,516.67 | $2,816.66 |
| Three months after Effective Date | $4,333.33 | $1,516.67 | $2,816.66 |
| | $21,000.00 | $7,726.28 | $13,273.72 |

Leighton shall send each payment via U.S. mail in the form of two separate checks made payable in the amounts set forth above to:

Karpf, Karpf & Cerutti, P.C.
c/o Jeremy M. Cerutti, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020

**IN WITNESS WHEREOF,** the Parties have executed and delivered this Agreement as of the date of the last signature below:

_____

CLAYTON NOAL

LEIGHTON SECURITY SERVICES, INC.

By: _____

Printed Name: Kevin Mayberry

Title: Owner

Dated: 9/10/21

KARPF, KARPF & CERUTTI, P.C

By. _Jeremy Cerutti, Esq._

   Jeremy M. Cerutti,
   Attorney for Plaintiff

**ATTORNEYS (AS TO FORM ONLY):**

**ANDERSON GROSSMAN, PLLC**

By _____

   R. Scott Anderson
   Attorney for Defendant

MEYER, UNKOVIC & SCOTT LLP

By: _____

   Brittany M. Bloam
   Attorney for Defendant

SETTLEMENT AND RELEASE AGREEMENT
2629.21

PAGE 5

## ACKNOWLEDGMENT

STATE OF TEXAS                          §
                                        §
COUNTY OF Fannin                        §

   **BEFORE ME,** the undersigned authority, on this day personally appeared James Kevin

Mayberry, known to me to be the person whose name is subscribed above, and affirmed that he is

an authorized agent of Leighton Security Services, Inc., that he executed the above and foregoing

Agreement as the act and deed of said company, for the purposes and consideration therein

expressed and with full authority to so act.

   Subscribed and acknowledged to before me on the 10th day of September 2021.



Lore Lane Jones
My Commission Expires
08/12/2024
ID No. 130779120

Notary Public for the State of Texas

# Exhibit B

| SETTLEMENT STATEMENT FOR: | | | | | |
|---|---|---|---|---|---|
| **Noal, Clayton** | | | | | |
| **PA** | | | | | |
| | | | | | |
| SETTLEMENT AMOUNT: | | | | | $21,000.00 |
| | | | | | |
| EXPENSES: | | | | | |
| | Filing | | $402.00 | | |
| | Postage & Delivery | | $10.90 | | |
| | Subpoena Service | | $155.00 | | |
| | Copying Costs | | $6.60 | | |
| | Pacer (federal online research) | | $4.40 | | |
| | | | $578.90 | | |

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CLAYTON NOAL | : | **CIVIL ACTION** |
| | : | |
| Plaintiff, | : | |
| v. | : | **No.:** 21-23 |
| | : | |
| LEIGHTON SECURITY SERVICES, INC. | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>CERTIFICATION OF JEREMY M. CERUTTI, ESQ.</u>

1.  I am an attorney at law in good standing who is licensed to practice in the State Courts of New Jersey and Pennsylvania, the Middle, Eastern and Western Districts of Pennsylvania, the District of New Jersey and in the Third Circuit Court of Appeals.

2.  I graduated with honors from Rutgers Law School in 2005. Since then, I have been a licensed attorney for more than 15 years.

3.  I worked as a judicial law clerk for the Honorable James J. Morley in New Jersey Superior Court (Burlington County) from 2005 through 2006.

4.  I was hired as an associate attorney with the law firm of Karpf, Karpf and Virant, P.C. in October of 2006, now Karpf, Karpf & Cerutti, P.C.

5.  From 2006 through present, I have handled almost exclusively employment and civil rights matters. In my practice, I have litigated at least 350 federal employment and/or civil rights matters, including in the Western, Middle and Eastern Districts of Pennsylvania, and the District of New Jersey.

6.  I have been lead counsel and co-counsel in many state and federal trials involving employment claims throughout New Jersey and Pennsylvania (in state and federal courts), including in the Western District of Pennsylvania.

7.  I am well versed in state and federal employment law and current employment law trends, and I assist with cases that are appointed to our Firm by the Eastern District for review of Civil Rights matters and employment matters, as our Firm is referred matters for review and litigation on behalf of *pro se* litigants.

8.  In late 2011, I was elevated to the position of partner within the law firm. Since then, I have overseen training and mentoring of associate attorneys. I also oversee trial

distribution and management and independently handle a case load of approximately 40 civil rights cases at any given time.

9.  I understand that my requested billing rate of $350.00 is very reasonable within the Western District of Pennsylvania area for a specialized employment attorney such as myself based on my years of work experience and skill.

10. This requested billing rate was approved in March 2018 by the Honorable Kim R. Gibson after a jury trial in the matter of *Evans v. Cernics, Inc., et. al.* (Case No.: 14-125).

11. In the above-captioned case, I certify that I worked the hours as set forth in the Motion for Approval of the Settlement Agreement.

Jeremy M. Cerutti

Date: August 27, 2021

2

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GARY EVANS, JR.,                            )
                                            )
                    Plaintiff,              )      Civil Action No. 3:14-cv-125
        v.                                  )      Judge Kim R. Gibson
                                            )
CERNICS, INC. d/b/a CERNICS                 )
SUZUKI, JEFFREY CERNIC, and                 )
EDWARD CERNIC,                              )
                    Defendants.             )

<u>ORDER</u>

AND NOW, this __5th__ day of March, 2018, upon consideration of the motions for attorney's fees filed by Plaintiff Gary Evans (ECF No. 92) and Defendant Jeffrey Cernic (ECF No. 101), and in accordance with the accompanying memorandum opinion, **IT IS HEREBY ORDERED** as follows:

1.  Plaintiff's motion for attorney's fees (ECF No. 92) is **granted**. The Court finds that Plaintiff's hourly rate and hour total are reasonable, thus yielding a total lodestar amount of $72,100. However, the Court finds that a 30% reduction is warranted given Plaintiff's limited success at trial. Accordingly, the Court awards Plaintiff's counsel <u>$50,470</u> in attorney's fees.

2.  Defendant Jeffrey Cernic's motion for attorney's fees (ECF No. 101) is denied.

3.  The Clerk of Court is directed to mark this case as closed.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GARY EVANS, JR.,              )
                             )
              Plaintiff,      )        CIVIL ACTION NO. 3:14-CV-125
                             )
      v.                      )        JUDGE KIM R. GIBSON
                             )
CERNICS, INC. d/b/a CERNICS   )
SUZUKI, and EDWARD CERNIC, JR., )
                             )
              Defendants.     )

**MEMORANDUM OPINION**

I.    **Introduction**

Plaintiff Gary Evans, Jr. sued Defendants Jeffrey Cernic, Edward Cernic, Jr., and Cernics, Inc. for violations of the Americans with Disability Act, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). Evans asserted the following claims against each defendant: (1) disability discrimination; (2) denial of a reasonable accommodation; and (3) retaliation. (*See* ECF No. 1.)

The case proceeded to trial on October 30, 2017. (ECF No. 81.) After the close of evidence, Defendant Jeffrey Cernic moved for judgment as a matter of law on all claims against him pursuant to Fed. R. Civ. P. 50(a)(2). The Court granted Jeffrey Cernic's motion and dismissed Evans' claims against him. (ECF No. 84.)

The remaining claims went to the jury. The jury found in favor of Evans on his denial of a reasonable accommodation claim against Cernics, Inc., and awarded Evans $27,726.20. (ECF No. 90.) The jury found in favor of Defendants Edward Cernic, Jr. and Cernics, Inc. on all remaining claims. (*Id.*) The Court entered judgment on the jury's verdict. (ECF No. 95.)

Evans filed a motion for attorney's fees. (ECF No. 92.) Jeffrey Cernic—the Defendant that the Court dismissed after the presentation of evidence—also filed a motion for attorney's fees. (ECF No. 101.) Both motions have been fully briefed. (*See* ECF Nos. 93, 99, 101, 104, 105.) The Court heard oral argument on both motions on February 28, 2018. (*See* ECF No. 107.)

For the reasons stated below, Evans' motion for attorney's fees (ECF No. 92) will be **granted**, but the Court will reduce the lodestar amount by 30% to reflect Evans' limited success at trial. The Court will **deny** Jeffrey Cernic's motion for attorney's fees (ECF No. 101) in its entirety.

II.    Discussion

A.    Evans' Motion for Attorney's Fees

"The ADA permits the award of a 'reasonable attorney's fee, including litigation expenses and costs' in the discretion of the court, to a 'prevailing party.'" *Equal Employment Opportunity Comm'n v. Hesco Parts Corp.*, 57 F. App'x 518, 522 (3d Cir. 2003) (quoting 42 U.S.C. § 12205.) As the Third Circuit has stated, "[t]he Supreme Court has given 'generous formulation' to the term 'prevailing party' to reduce the financial burden on those seeking to vindicate important public interests that might otherwise be without an advocate," and "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Ward v. Philadelphia Parking Auth.*, 634 F. App'x 901, 903 (3d Cir. 2015) (quoting *Hensley v. Eckerhart*, 461 U.S. 424 at 433 (1983)). But "[t]his is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" *Hensley*, 461 U.S. at 433.

The first task in "determining the amount of a reasonable fee is the calculation of the 'lodestar' amount, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Kurschinske v. Meadville Forging Co.*, No. CIV.A. 06-87, 2008 WL 4462294, at *1 (W.D. Pa. Sept. 30, 2008) (citing *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3rd Cir. 1996)).

"The 'starting point' in determining the appropriate hourly rate is the attorneys' usual billing rate." *Pennsylvania Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 231 (3d Cir. 1998) (quoting *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995)). "[T]he district court should then consider the 'prevailing market rates' in the relevant community." *Pennsylvania Envtl. Def. Found.*, 152 F.3d at 231 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

When "calculating the second part of the lodestar determination, the time reasonably expended, '[t]he district court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Pennsylvania Envtl. Def. Found.*, 152 F.3d at 232 (quoting *Windall*, 51 F.3d at 1185). After the district court "calculat[es] the lodestar it may adjust that amount, primarily based on the degree of success that the plaintiff obtained." *Pennsylvania Envtl. Def. Found.*, 152 F.3d at 232 (citing *Hensley*, 461 U.S. at 435.) The district court must calculate the lodestar before it makes any adjustments. *Pennsylvania Envtl. Def. Found.*, 152 F.3d at 232 (citing *Windall*, 51 F.3d at 1190.)

1.     Lodestar Calculation

    a.     Prevailing Market Rate

The Court finds that the rate charged by Plaintiff's counsel is reasonable. Plaintiff submitted three affidavits from peer attorneys attesting to the reasonableness of his $350 an hour rate.[1] (*See* ECF No. 92-5.) Additionally, the Court notes that the rate charged by Plaintiff's counsel is comparable to rates charged by other practitioners in the community with similar experience and skill. Further, Plaintiff's counsel is a partner of his firm and has over a decade of experience litigating civil rights and employment matters. (*See* ECF No. 93 at 8.) Accordingly, the Court finds that Plaintiff's counsel's requested rate of $350 an hour is reasonable.

    b.     Reasonable Time Expended

The Court finds that Plaintiff's counsel's 206 hours spent on this case constitute a reasonable expenditure of time given the factual and legal issues that this case entailed.[2] Plaintiff's counsel represented Plaintiff through the entire lifetime of this case, beginning with administrative proceedings before the EEOC and culminating with a four-day jury trial. (ECF No. 93 at 9.) Plaintiff's counsel submitted a detailed work log that describes his litigation-related activities in sufficient detail and also specifies the amount of time that he spent on each task.[3] (ECF No. 92-3.) After reviewing Plaintiff's counsel's time log, the Court finds that the amount of

---

[1] The Court notes that Defendants do not challenge the reasonableness of the hourly fee charged by Plaintiff's counsel. (*See, generally,* ECF No. 99.)

[2] The Court notes that Plaintiff's counsel's time log stated that Plaintiff's counsel spent 216 hours on this case. (ECF No. 92-3.) However, at oral argument, Plaintiff identified a typographical error in his time log and explained that, in reality, he only spent 206 hours on the case. The Court therefore accepts Plaintiff's counsel's corrected time calculation of 206 hours as the accurate computation of the time that he spent on this case.

[3] The Court also notes that Plaintiff's counsel did not bill any hours worked by his paralegal staff on this case. (See ECF No. 93 at 10.)

4

time Plaintiff's counsel spent on each task was reasonable. Therefore, the Court finds that Plaintiff's counsel's 206 hours represent a reasonable expenditure of time on this case.

### c.      Lodestar Subtotal

Multiplying $350 (reasonable hourly rate) with 206 (reasonable number of hours expended) yields a lodestar of $72,100.

The Court's inquiry does not end here. Defendants ask this Court to reduce Plaintiff's attorney's fees by 75% because of Plaintiff's limited success at trial. (*See* ECF No. 99 at 7-9.) While this Court finds that a 75% reduction in attorney's fees would be excessive, the Court agrees with Defendants that Plaintiff's limited success at trial warrants a significant adjustment in the attorney's fees that he should collect.

### 2.      A 30% Reduction in Attorney's Fees is Warranted Given Plaintiff's Limited Success at Trial

"The amount of the fee . . . must be determined on the facts of each case." *Hensley*, 461 U.S. at 429. A district court "may adjust the lodestar upward or downward based on a variety of reasons." *Consumers Produce Co. v. Georgiana Produce, Inc.*, No. CIV.A. 10-1068, 2012 WL 88013, at *1 (W.D. Pa. Jan. 11, 2012). "[T]he most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. When the district court "choose[s] to 'reduce the award to account for the limited success' [it] may 'make a percentage reduction[.]'" *Sallitt v. Stankus*, No. 3:07CV361, 2010 WL 2553887, at *2 (M.D. Pa. June 21, 2010) (quoting *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 925 n. 44 (3d Cir. 1985)).

The Court finds that a reduction in 30% is warranted given the circumstances of this case. Plaintiff achieved "limited success;" he only succeeded on only one claim at trial[4] and obtained a jury award approximately 7% of his initial settlement demand.[5] Furthermore, Plaintiff rejected Defendants' $50,000 offer of judgment, which would have greatly reduced the costs of litigation and resulted in a settlement greater than the award that Plaintiff ultimately won at trial.[6] (ECF No. 92-6.) Plaintiff's counsel significantly overestimated the value of Plaintiff's claims, as evidenced by Plaintiff's filing for summary judgment on all counts only to prevail on one count at trial and collecting a fraction of his settlement demand and approximately half of the Defendants' offer of judgment.

Therefore, the Court awards Plaintiff's counsel <u>$50,470</u> in attorney's fees, a 30% reduction from the lodestar amount of $72,100.

---

[4] The parties dispute how many "claims" Plaintiff tried. Plaintiff argues that he tried three claims—ADA/PHRA claims for (1) disability discrimination, (2) failure to accommodate, and (3) retaliation. (See ECF No. 105 at 5.) Defendants contend that Plaintiff brought 12 claims—three ADA claims and one PHRA claim against each of the three Defendants. (ECF No. 99 at 1-5.) Without deciding the issue, the Court merely notes that regardless of which method this Court uses to calculate the number of claims, Plaintiff succeeded on a small fraction of the claims he took to trial.

[5] Plaintiff initially demanded $375,000 to settle the case. (Demand Letter from October 17, 2014, Defendants' Hearing Exhibit # 1.)

[6] The parties agree that, under Fed. R. Civ. P. 68, Plaintiff may not pursue costs incurred after Plaintiff denied Defendants' offer of judgment by not accepting it within 14 days of its having been made. (See ECF No. 92-6.) Accordingly, Plaintiff may not recover costs incurred after April 15, 2015. (See id.) Defendants argue in their Response Brief that "costs" include "attorney's fees," thus barring Plaintiff from recovering attorney's fees after April 15, 2015. (ECF No. 99 at 9.) However, Defendants seemed to abandon this position at oral argument, as Plaintiff argued that "attorney's fees" are not included in "costs" and Defendants never responded. In any regard, the Court rejects Defendants' argument that "costs" include "attorney's fees." *Wyatt v. Ralphs Grocery Co.*, 65 F. App'x 589, 591 (9th Cir. 2003) (emphasis in original) (citing *Webb v. James*, 147 F.3d 617, 622-23 (7th Cir. 1998)) (holding that the ADA "does *not* define costs to include fees.")

B.    Defendant Jeffrey Cernic's Motion for Attorney's Fees

Defendant Jeffrey Cernic asks this Court to award attorney's fees to the Defendants because Plaintiff pursued his claims against Jeffrey Cernic in bad faith. (*See* ECF No. 101.) Defendants contend that after the close of discovery, Plaintiff knew that Jeffrey Cernic was not a "supervisor" under the governing law and therefore knew that he could not possibly prevail on his claims against him. (*Id.* at 3-4.) In response, Plaintiff argues that he had more than sufficient evidence to proceed on his claims against Jeffrey Cernic and that he did not pursue his claims against him in bad faith. (ECF No. 104 at 10) Plaintiff further asserts that reverse attorney's fees are generally inappropriate in civil rights cases. (*Id.* at 13-17.)

"As the Supreme Court held in *Christiansburg*, while prevailing plaintiffs 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust,' a prevailing defendant is entitled to attorney's fees only 'upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation . . . .'" *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 158 (3d Cir. 2001) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). "'[F]rivolous, unreasonable, or without foundation,' in this context, implies 'groundless . . . rather than simply that the plaintiff has ultimately lost his case.'" *E.E.O.C. v. L.B. Foster Co.*, 123 F.3d 746, 751 (3d Cir. 1997) (quoting *Christainsburg*, 434 U.S. at 421.)

The Supreme Court advises:

it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

7

*Chistainsburg*, 434 U.S. at 421-22; *L.B. Foster*, 123 F.3d at 751. Accordingly, the Third Circuit has repeatedly held that "attorney's fees [to a prevailing . . . defendant] are not routine, but are to be only sparingly awarded." *L.B. Foster*, 123 F.3d at 751 (internal citations and quotation marks omitted.)

Plaintiff's claims against Jeffrey Cernic were certainly not airtight. But they were not "frivolous, unreasonable, or without foundation." Plaintiff had a reasonable basis for believing that Jeffrey Cernic was a "supervisor" under the applicable law; Edward Cernic testified in his deposition that Jeffrey Cernic interviewed Plaintiff for his job and "usually" participated in the decisions to discipline and terminate employees. (*See* ECF No. 104-2.)

While the Court granted Jeffrey Cernic's motion for judgment as a matter of law, Plaintiff had a non-frivolous basis for proceeding against Jeffrey Cernic and did not pursue his claims against Jeffrey Cernic in bad faith. Therefore, the Court will deny Defendant Jeffrey Cernic's motion for attorney's fees.

### III.    Conclusion

The Court grants Plaintiff's motion for attorney's fees, but reduces the requested amount by 30% in light of Plaintiff's limited success at trial. The Court denies Defendant Jeffrey Cernic's motion for attorney's fees because Plaintiff's claims against him were not frivolous.

An appropriate order follows.